**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| LATIA THOMPSON-MCKOY,<br><br>Plaintiff, *pro se*,<br><br>v.<br><br>TODD A. KELTING, *et al.*<br><br>Defendants. | ) | Civil Action No. 25-cv-01795-LKG<br><br>Dated: September 9, 2026 |

**MEMORANDUM OPINION**

## I. INTRODUCTION

In this civil action, the Plaintiff *pro se*, Latia Thompson-McKoy brings claims on behalf of herself and her minor son, against the Defendants, Todd A. Kelting, Esq., and Offit Kurman, P.A., arising from a series of eviction proceedings brought against her in the District Court of Maryland for Baltimore County, pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*; 42 U.S.C. §1983; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(c) and (d); the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.*; and Maryland law. ECF Nos. 1 and 4. The Defendants have moved to dismiss the complaint, or, in the alternative, for summary judgment on these claims, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 56. ECF No. 28. The motion is fully briefed. *See id.*; ECF Nos. 28, 28-1, 31 and 32. No hearing is necessary to resolve the motion. *See* L.R. 105.6 (D. Md. 2025). For the reasons that follow, the Court: (1) **GRANTS-in-PART and DENIES-in-PART** the Defendants' motion to dismiss (ECF No. 28); and (2) **DISMISSES** Counts II-VIII of the complaint and the Plaintiff's Section 1692f claim in Count I of the complaint.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

In this civil action, the Plaintiff brings claims on behalf of herself and her minor son against the Defendants, arising from certain eviction proceedings before the District Court of Maryland for Baltimore County. ECF No. 4 at ¶¶ 1, 10 and 15. Specifically, the Plaintiff asserts the following claims against the Defendants in the complaint: (1) violation of the FDCPA, 15 U.S.C. §§ 1692e, 1692f and 1692g (Count I); (2) deprivation of property without due process, in violation of 42 U.S.C. § 1983 (Count II); (3) violation of RICO, 18 U.S.C. § 1962(c) and (d) (Count III); (4) abuse of process and fraud on the court (Count IV); (5) violation of the MCDCA, Md. Code Ann., Com. Law § 14-202 (Count V); (6) supplemental state law claims under the MCDCA, the MCPA, Md. Code Ann., Bus. Reg. § 7-301 and common law fraud and misrepresentation (Count VI); (7) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* (Count VIII); and (8) declaratory and injunctive relief, pursuant to 28 U.S.C. §§ 2201-2202 (Count VIII). *See generally* ECF No. 4. As relief, the Plaintiff seeks, among other things, certain declaratory and injunctive relief and to recover actual and punitive damages from the Defendants. *Id.* at Prayer for Relief.

<u>The Parties</u>

Plaintiff Latia Thompson-McKoy is a Maryland resident. *Id.* at ¶ 7.

Defendant Todd A. Kelting, Esq. is an attorney licensed in Maryland who, at all relevant times to this case, acted as counsel for UDR, Inc. ("UDR"). *Id.* at ¶ 8. Mr. Kelting represents UDR and works for Defendant Offit Kurman, P.A. *Id.*

Defendant Offit Kurman, P.A. is a law firm that is located in Bethesda, Maryland and regularly engages in landlord-tenant and debt-collection litigation in Maryland courts. *Id.* at ¶ 9.

<u>The Plaintiff's Lease Agreement</u>

As background, the Plaintiff and her minor son reside in an apartment (the "Apartment") located at 20 Lambourne Road, Towson, Maryland. *Id.* at ¶¶ 7 and 10. On or about October 29, 2024, the Plaintiff executed a lease agreement with Consolidated-Hampton, LLC to lease the Apartment (the "Lease Agreement"). *Id.* at ¶14A.

The Lease Agreement provides that the Plaintiff will pay $1,680.00 per month in rent, made payable to UDR/20 Lambourne ("UDR") ECF No. 28-4 at 8. The Lease Agreement

[1] The facts recited in this memorandum opinion are taken from the complaint; the Defendants' motion to dismiss, or, in the alternative, for summary judgment, and the memorandum in support thereof; the Plaintiff's response in opposition thereto; and the Defendants' reply brief. ECF Nos. 4, 28, 28-1, 31 and 32.

also requires that the Plaintiff buy and maintain renters' insurance, and that a failure to maintain the required renters' insurance is an incurable breach of the Lease Agreement that may result in the termination of tenancy and eviction. *Id.* at 9.

In this regard, Section 8 of the Lease Agreement provides that:

> 8. INSURANCE. We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow lighting, wind, explosions, earthquake, interruption of utilities, theft, hurricane negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law. You [Plaintiff] are required to buy and maintain renters insurance naming the owner as an insured in the minimum amount of $_______________ for property and $100000.00 for personal liability. If a minimum coverage amount is left blank, you are not required to have that type of insurance. * * * Failure to maintain required insurance throughout your tenancy, including any renewal periods and/or lease extension, is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

*Id.* at 9. In addition, "Rider 1 to Lease Addendum Liability Insurance Required of Resident," addresses tew failure to maintain liability insurance and provides, in relevant part, that:

> 3. DEFAULT AND FORCE PLACEMENT. Except where prohibited by law, failure to obtain and maintain liability insurance as required under the Lease Contract and this Addendum is an immediate, material default under the terms of your Lease Contract. In such event, we will send a written notice to you demanding that you cure the violation by procuring the required insurance and supplying evidence of coverage to us. If you fail to obtain and supply evidence of such insurance to us on or before the date set forth in your notice, we shall be entitled to exercise all rights and remedies under the Lease Contract and applicable law, including but not limited to the right to procure liability-only insurance coverage on your behalf and at your sole cost and expenses, but we shall be under no obligation to procure such coverage on your behalf. SUCH COVERAGE SHALL PROTECT ONLY OUR INTERESTS, AND WILL NOT COVER ANY OF YOUR PERSONAL PROPERTY OR OFFSET ANY OF YOUR LIABILITY FOR ANY DAMAGES THAT YOU MAY BE HELD ACCONTABLE FOR, AND SHALL REMAIN IN PLACE DURING THE TERM OF THE LEASE CONTRACT UNTIL SUCH TIME YOU PROVIDE EVIDENCE OF YOUR OWN LIABILITY INSURANCE POLICY. If we procure liability-only insurance coverage on your behalf, we will charge you, and you agree to pay, $10.00 per month. This incudes the $5.825 premium payable to the insurance company, $0.175 taxes and fees due to state insurance governing bodies and a $4.00 administrative fee for the expense of

> processing monthly payments and administering the insurance program. You agree that this administrative fee is a liquidated damages provision, and not a penalty, and that such amount is a fair and reasonable estimate of the administrative costs we will incur as a result of procuring the liability insurance coverage for you and administrating and overseeing such coverage. 4. By signing this Addendum, you agree to pay us $10.00 per month as set forth in paragraph 3 above, in addition to all other obligations under the Lease Contract. You also agree that the premium payment made by us on your behalf, and the administrative fee, will be considered additional rent and failure to pay such amounts shall entitle us to exercise any and all remedies applicable to your failure to pay rent when due, including, without limitation, the assessment of late fees in accordance with the Lease Contract. YOU ACKNOWLEDGE AND AGREE THAT ANY LIABILITY-ONLY INSURANCE COVERAGE OBTAINED BY US ON YOUR BEHALF MAY NOT BE AS BENEFICIAL TO YOU AS YOUR OWN INSURANCE AND THE PREMIUMS MAY BE MORE EXPENSIVE THAN THE PREMIUMS DUE IF YOU WERE TO OBTAIN AND MAINTAIN A RENTER'S INSURANCE POLICY ON YOUR OWN BEHALF. 5. BINDING AGREEMENT. The parties acknowledge and agree that this Rider 1 shall be binding upon their heirs, legal representatives, successors and assigns.

*Id.* at 35.

<u>The Eviction Proceedings</u>

On or about February 10, 2025, a representative of UDR, Brenna Costner, affixed to a 10-day "Notice of Intent to File Complaint for Summary Ejectment for Failure to Pay Rent" to the Plaintiff's apartment unit, pursuant to Md. Code, RP § 8-401(c). ECF Nos. 28-3 at ¶¶ 12-13 and 28-5. On February 24, 2025, Plaintiff filed a complaint against, among others, Ms. Costner and UDR in this Court. *See Latia Thompson-McKoy v. UDR, Inc., et al.*, No. 1:25-cv-00611-JRR (D. Md. 2025) (the "UDR Lawsuit").

On February 25, 2025, the Defendants in this civil action filed a complaint to evict the Plaintiff for failure to pay rent in the District Court of Maryland for Baltimore County, on behalf of UDR. *See UDR, Inc. v. Latia McKoy*, District Court of Maryland for Baltimore County, Case No. D08-LT-25-51336-005 (the "First Failure to Pay Rent 1 Case"). On March 25, 2025, the Court remanded the First Failure to Pay Rent 1 Case to state court. ECF No. 28-11.

Thereafter, Ms. Costner sent a second Notice of Intent to Eject for Failure to Pay Rent to the Plaintiff, alleging that she failed to pay rent for the months of February through April 2025, on April 10, 2025. ECF No. 28-12. And so, on April 30, 2025, Mr. Kelting filed a second complaint to eject for failure to pay rent against Plaintiff, brough in the name of

"Consolidated Hampton, LLC/20 Lambourne" as the plaintiff (the "Second Failure to Pay Rent Case"). ECF No. 28-13. Thereafter, the Plaintiff removed the case to this Court and the Court remanded the Failure to Pay Rent 2 Case to the state court. *Id.*

On May 3, 2025, Mr. Kelting served the Plaintiff with a "30-DAY NOTICE TERMINATING YOUR TENACY," pursuant to Md. Code, RP § 8- 401(a)(1)(i)(2), on behalf of UDR and Consolidated. ECF No. 8-4. The notice provides that termination of the tenancy is based upon on the grounds that: "You have allegedly violated Paragraph 7 of the Lease, the State of Maryland Utility and Services Addendum, and the Liability Insurance Required of Resident Addendum by failing to pay utilities and liability insurance when due. These are substantial breaches of the lease that warrant your eviction from the Premises. The landlord desires to terminate your tenancy, and you are hereby given 30 days from the delivery of this notice to vacate the premises." *Id.*

On June 4, 2025, the Defendants in this case filed a complaint to Eject for Breach of Lease against Plaintiff, on behalf of UDR and Consolidated. ECF No. 28-16 (the "Breach of Lease Case"). On June 30, 2025, the Defendants filed a third Complaint to Eject for Failure to Pay Rent against Plaintiff (the "Third Failure to Pay Rent Case"). ECF No. 28-17 (hereafter "Failure to Pay Rent Case 3").

On July 1, 2025, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Maryland. ECF No. 28-18. And so, the aforementioned cases have been stayed pending the resolution of the Plaintiff's bankruptcy case. ECF Nos. 28-18 and 28-17.

<u>The Defendants' Alleged Misconduct</u>

In the complaint, the Plaintiff alleges that the Defendants initiated and prosecuted multiple eviction filings against her in the Maryland state courts, on behalf of UDR, between March 2024 and April 2025. *Id.* at ¶ 10. In this regard, the Plaintiff alleges that the Defendants improperly relied upon certain notices issued by an employee of UDR, Brenna Costner, that were signed without authorization from Consolidated-Hampton, LLC. *Id.* The Plaintiff also alleges that the Defendants filed documents in the eviction proceedings that falsely state that UDR was the legal landlord for the Apartment and failed to disclose that UDR: (1) is not the titled owner of the Apartment; (2) lacked a rental license; (3) had no debt-collection license; and (4) failed to disclose any agency relationship with Consolidated-Hampton, LLC. *Id.* at ¶ 11.

With regards to Defendant Kelting, the Plaintiff alleges that, on May 3, 2025, Mr. Kelting served her with a 30-day notice to vacate the Apartment that falsely identified

"20 Lambourne," as the landlord for the Property, thereby creating inconsistency and confusion with the Defendants' prior legal filings that name UDR as the landlord. *Id.* at ¶¶ 12-13. The Plaintiff also alleges that the 30-day notice falsely claims that she violated the Lease Agreement by failing to maintain renters' insurance.[2] *Id.* at ¶¶ 14A-14B. In addition, the Plaintiff alleges that she has reviewed at least 15 other court filings submitted by Defendant Kelting that contain similar procedural and disclosure defects, suggesting a widespread pattern of unlawful debt-collection and eviction tactics. *Id.* at ¶ 17.

Given this, the Plaintiff contends that she experienced severe emotional distress and anxiety symptoms, resulting in elevated blood pressure and requiring medical treatment, and that she suffered reputational harm, threats of lockout and substantial legal expenses, as a result of the Defendants' conduct. *Id.* at ¶¶ 3, 18 and 21. And so, the Plaintiff seeks, among other things, certain declaratory and injunctive relief and to recover actual and punitive damages from the Defendants. *Id.* at Prayer for Relief.

<u>The Plaintiff's Claims</u>

The Plaintiff asserts the following eight claims in the complaint: (1) violation of the FDCPA (Count I); (2) Section 1983/deprivation of property without due process (Count II); (3) RICO violation (Count III); (4) abuse of process and fraud on the court (Count IV); (5) MCDCA violation (Count V); (6) supplemental state law claims (Count VI); (7) Truth in Lending Act violation (Count VIII); and (8) declaratory and injunctive relief, pursuant to 28 U.S.C. §§ 2201-2202 (Count VIII). *See generally* ECF No. 4. The Plaintiff's allegations for these claims are summarized below.

First, with regards to her FDCPA claim in Count I of the complaint, the Plaintiff alleges that the Defendants violated the FDCPA by: (1) "[f]iling false, misleading, or deceptive documents in Maryland courts, including naming 'UDR, Inc.' as landlord and relying on unauthorized notices from UDR employees;" (2) "[p]ursuing debt collection efforts without validating the debt or verifying legal standing after Plaintiff submitted written

---

[2] The Plaintiff alleges that the Lease Agreement provides for a fixed-term lease running from October 29, 2024, through March 29, 2026, and that under Md. Code Ann., Real Prop. § 8-402.1, a landlord may not unilaterally terminate a fixed-term residential lease *via* a 30-day notice absent an explicit lease provision authorizing such termination and compliance with due process. ECF No. 4 at ¶ 14A. The Plaintiff also alleges that Paragraph 7 of the Lease Agreement, which purports to impose a renters' insurance requirement, was left blank and contained no named insurer, policy number, or coverage amount, rendering this provision incomplete and unenforceable. *Id.* at ¶ 14B.

dispute;" and (3) "[v]iolating §§ 1692e, 1692f, 1692g [of the FDCPA] by using notices from an entity (UDR) not licensed as a debt collector in Maryland." *Id.* at 7. Second, in her Section 1983 claim in Count II of the complaint, the Plaintiff alleges that the Defendants violated Section 1983 and her due process rights, by: (1) "by invoking judicial eviction powers using defective notices and unlawful filings;" (2) "[k]nowingly assisting in seizure attempts of [her] leasehold interest through unlawful summary ejectment filings;" and (3) "[v]iolating [her] Fourteenth Amendment rights." *Id.* at 7–8.

Third, the Plaintiff contends in Count III of the complaint that the Defendants violated Sections 1962(c) and (d) of RICO, by forming an enterprise using mail and wire fraud, fraudulent eviction filings and collecting unlawful debts. *Id.* at 9. To support this claim, the Plaintiff alleges the Defendants' predicate acts include: (1) "[m]ail fraud (false notices), [s]ending eviction notices and legal threats by U.S. mail;" (2) "[w]ire fraud (court e-filings), [u]sing court electronic systems to transmit fraudulent legal pleadings;" (3) "[f]raud on the court;" (4) "[u]se of fictitious or unauthorized documents to obtain property;" and (5) "[c]ollection of unlawful debt – [p]ursuing funds through unlicensed and deceptive means." *Id.* Fourth, with regards to her abuse of process/fraud claim in Count IV of the complaint, the Plaintiff alleges that the Defendants committed fraud on the state court by: (1) "[k]nowingly filed summary ejectment complaints under the name 'Consolidated-Hamilton LLC' using notices issued by a UDR employee (Costner) with no legal authority" and (2) "[m]isrepresented standing and facts to the Maryland District Court in order to secure wrongful relief." *Id.*

Fifth, in Count V of the complaint, the Plaintiff alleges that the Defendants violated the MCDCA by "attempt[ing] to collect a debt using improper threats and without proper licensure in violation of Md. Code, Com. Law §14-202." *Id.* Sixth, with regards to her supplemental state law claims in Count VI of the complaint, the Plaintiff alleges that the Defendant's violated the MCDCA, MCPA, Md. Code Ann., Bus. Reg. § 7-301, Maryland common law fraud and misrepresentation by failing to disclose certain material facts and using deceptive practices to threaten her with eviction and legal penalties that are "not authorized by law." *Id.* at 8–9.

Seventh, the Plaintiff contends in Count VII of the complaint, that the Defendants violated TILA by failing to provide certain TILA-required disclosures and not informing her the legal consequences of the Lease Agreement "being treated as a financial instrument subject to enforcement by third parties." *Id.* at 9. Lastly, in Count VIII of the complaint, the Plaintiff seeks, among other things, a declaratory judgment declaring that the eviction

actions pursued by the Defendants are "void and legally defective" and an order enjoining the Defendants from engaging in eviction activities related to the Apartment. *Id.*

### B. Procedural Background

The Plaintiff commenced this civil action on June 5, 2025. ECF No. 4.[3] On November 18, 2025, the Defendants filed a motion to dismiss the complaint, or, in the alternative, for summary judgment, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 56, and a memorandum in support thereof. ECF Nos. 28 and 28-1.

On December 18, 2025, the Plaintiff filed a response in opposition to the Defendants' motion. ECF No. 31. On December 30, 2025, the Defendants filed a reply brief. ECF No. 32.

The Defendants' dispositive motion having been fully briefed, the Court resolves the pending motion.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 9(b)

Federal Rule of Civil Procedure 9(b) provides that claims that sound in fraud are subject to a heightened pleading standard, which requires that "the circumstances constituting fraud" be stated "with particularity." Fed. R. Civ. P. 9(b). And so, this Court has held that a plaintiff must plead with particularity, "'who made what false statement, when, and in what manner . . .; why the statement is false; and why a finder of fact would . . . conclude that the defendant acted with scienter . . . and with the intention to persuade others to rely on the false statement.'" *Dominion Fin. Servs., LLC v. Pavlovsky*, 673 F. Supp. 3d 727, 747 (D. Md. 2023) (alterations in original) (quoting *McCormick v. Medtronic, Inc.*, 101 A.3d 467, 492–93 (2014)).

### B. Fed. R. Civ. P. 12(b)(1)

A motion to dismiss for lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), is a challenge to the Court's "competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). The United States Supreme Court has explained that subject-matter jurisdiction is a "threshold matter" that is "inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). And so, an objection that the Court lacks subject-matter jurisdiction "may be raised by a party, or by a

[3] The Plaintiff states in her response in opposition that she filed an amended complaint on June 30, 2025. ECF No. 31 at 2. But the Defendants correctly observe that no amended complaint has been filed in this case. ECF No. 32 at 1 n.1. And so, the complaint (ECF Nos. 1 and 4) remains the operative pleading

court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

The United States Court of Appeals for the Fourth Circuit has also explained that the plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). Given this, the Court "regard[s] the pleadings as mere evidence on the issue[ ] and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," when deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Id.* (citation omitted). And so, if a plaintiff "fails to allege facts upon which the court may base jurisdiction," then the Court should grant a motion to dismiss for lack of subject-matter jurisdiction. *Davis*, 367 F. Supp. 2d at 799.

**C. Fed. R. Civ. P. 12(b)(6)**

To survive a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of the plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet, Ltd.*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Priv. Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

**D. *Pro Se* Litigants**

The Plaintiff is proceeding in this matter without the assistance of counsel. And so, the Court must construe the complaint liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980). But, in doing so, the Court cannot disregard a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *see*

*also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented"); *Bell v. Bank of Am., N.A.*, No. 13-478, 2013 WL 6528966, at *1 (D. Md. Dec. 11, 2013) ("Although a *pro se* plaintiff is general[ly] given more leeway than a party represented by counsel . . . a district court is not obliged to ferret through a [c]omplaint . . . that is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.") (quotations and citations omitted). And so, if a plaintiff fails to allege sufficient facts setting forth a cognizable claim, the Court must dismiss the complaint.

**E. Section 1983, TILA And RICO**

Congress enacted the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." *Mourning v. Family Publications Serv., Inc.,* 411 U.S. 356, 364–65 (1973). The TILA requires, among other things, that lenders "clearly and conspicuously provide a number of disclosures to borrowers, including the disclosure of the borrowers' right to rescind a consumer credit transaction." *Watkins v. SunTrust Mortgage, Inc.,* 663 F.3d 232, 234 (4th Cir. 2011) (quoting 15 U.S.C. § 1601(a)). Creditors are also required "to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrowers' rights" under the TILA. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998); *see generally* 15 U.S.C. §§ 1601-1667f.

Title 42, United States Code, Section 1983 provides a mechanism for individuals who have had their constitutional rights violated to seek a remedy against individual state actors. *See* 42 U.S.C. § 1983 (providing that if any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives a United States citizen of any constitutional right, that person may be liable in a suit for money damages). To state a claim under Section 1983, a plaintiff must allege facts to show that: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019), *as amended* (Jan. 9, 2019). A Section 1983 plaintiff must also allege personal involvement of the defendant. *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) ("[L]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights.") (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

Lastly, to state a claim for a civil RICO claim, a plaintiff must allege facts to show: "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Despite Morley v. Cohen*, 888 F.2d 1006, 1009 (4th Cir. 1989) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

**F. The FDCPA, The MCDCA And The MCPA**

To state a claim under the Fair Debt Collection Practices Act, a plaintiff must allege facts to show that: (1) the defendants are "debt collectors" as defined by that statute; (2) the plaintiff was the "object of collection activity" arising from a consumer debt; and (3) the defendants were engaged in an act or omission prohibited by the FDCPA. *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 333 n.3 (4th Cir. 2012). In this regard, the FDCPA defines a "debt collector" as "any person ... who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be due another." 15 U.S.C. § 1692a(6). This Court has held that creditors are not debt collectors when they act to collect debts owed to themselves. *Boccone v. Am. Express Co.*, No. 05-3436, 2007 WL 2914909, at *5 (D. Md. Oct. 4, 2007) ("creditors collecting debts in their own names and whose primary business is not debt collection are not subject to the FDCPA."); *Reyes v. Bank of Am.*, N.A., No. CIV. PJM 12-3798, 2013 WL 6012504, at *2 (D. Md. Nov. 12, 2013) (as a general matter, creditors are not subject to the FDCPA).

To state a claim under the MCDCA, a plaintiff must allege facts to show that: "(1) the defendant 'did not [possess] the right to collect the amount of debt sought'; and (2) the defendant 'attempted to collect the debt knowing that they lacked the right to do so.'" *Barr*, 303 F. Supp. 3d at 420 (quoting *Lewis v. McCabe, Weisberg & Conway, LLC*, No. 13-1561, 2014 WL 3845833, at *6 (D. Md. Aug. 4, 2014) (citation omitted)). Lastly, to state a claim under the MCPA, a plaintiff must allege facts to show that: "(1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the misrepresentation, and (3) doing so caused the plaintiff actual injury." *Barr*, 303 F. Supp. 3d at 416 (quoting *Palermino v. Ocwen Loan Servicing, LLC*, No. 14-0522, 2015 WL 6531003, at *2 (D. Md. Oct. 26, 2015) (citation omitted)). In addition, MCDCA and MCPA claims are subject to the heightened pleading standard under Fed. R. Civ. P. 9(b), which requires a plaintiff to plead "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013); *Butler v. Citizens Bank, N.A.*, No. 17-3417, 2018 WL 2840413, at *4 (D. Md. June 11, 2018) (holding that a MCDCA claim is subject to the heightened pleading standard under

Fed. R. Civ. P. 9(b), which requires a plaintiff to plead "with particularity the circumstances constituting fraud.").

**IV. ANALYSIS**

The Defendants have moved to dismiss the complaint or, in the alternative, for summary judgment in their favor on the following six grounds: (1) the Plaintiff's section 1983 claim must be dis missed, because the Defendants are not state actors and they did not loan the Plaintiff money; (2) the Plaintiff lacks Article III standing; 94) the Plaintiff fails to state a plausible FDCPA claim; (4) the Plaintiff fails to state a plausible MCDCA and MCPA claims; (5) the Plaintiff fails to state a plausible RICO claim; (6) the Plaintiff fails to plead with particularity the elements of her fraud/abuse of process claim; and (7) the defendants are entitled to qualified immunity. ECF No. 28-1 at 10-26. And so, the Defendants request that the Court dismiss the complaint. *Id*. at 26.

In her response in opposition to the Defendants' dispositive motion, the Plaintiff does not substantively respond to many of the Defendants arguments. *See generally*, ECF No. 31. But the Plaintiff does argue that the Court should not dismiss this matter, because: (1) she has Article III standing; (2) the complaint plausibly states a FDCPA claim; and (3) she plausibly alleges claims under the MCDCA and MCPA in the complaint. ECF No. 31 at 2–6. And so, the Plaintiff requests that the Court deny the Defendants' motion. *Id*. at 6.

For the reasons that follow, a careful reading of the complaint shows that the Plaintiff has standing to pursue her claims in this civil action. But the complaint makes clear that the Plaintiff fails to state claims under Section 1983 and the TILA, because the Defendants are not state actors or lenders. The Plaintiff's civil RICO, fraud and abuse of process claims are also not plausible, because the complaint lacks sufficient factual allegations: (1) to show the existence of an enterprise, scienter, falsity, and damages; (2) to plead fraud with particularity; and (3) to show that the Defendants used the eviction process at issue in this case in a manner not contemplated by law.

In addition, a careful reading of the complaint shows that the Plaintiff fails to state plausible claims under the MCDCA, and MCPA, because the complaint fails to plead with particularity: (1) how the Defendants engaged in an unfair or deceptive practice; (2) reliance; and (3) that the Defendants lacked the right to collect the rent due under the Lease Agreement and to pursue eviction proceedings against the Plaintiff. The Defendants have not shown, however, that the Plaintiff's FDCPA claims are not plausible. And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART the Defendants' motion to dismiss (ECF No. 28); and (2) DISMISSES Counts II-VIII of the complaint and the Plaintiff's Section 1692f claim

in Count I of the complaint.

**A. The Plaintiff Has Article III Standing**

As an initial matter, the Court is satisfied thar the Plaintiff has Article III standing to pursue her claims in this civil action. To have Article III standing, the Plaintiff must show that: (1) she suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury was likely caused by the Defendants; and (3) the injury would likely be redressed by judicial relief. *O'Leary v. Trustedid, Inc.*, 60 F.4th 240, 242 (4th Cir. 2023) (quotation omitted).

In this case, the Court is satisfied that the Plaintiff can show that she suffered an injury-in-fact, because she alleges that the Defendants, through their court-filings and litigation tactics, threatened her continued tenancy in the Apartment and caused her to suffer anxiety and elevated blood pressure. ECF No. 4 at ¶¶ 10-14, 18, 20. As the Defendants correctly observe, some of the harm alleged by the Plaintiff is emotional in nature. ECF No. 28-1 at 13. But there is no prohibition to establishing standing based on such harm in the Fourt Circuit. More importantly, the Plaintiff also alleges that she incurred other harms related to the possible termination of her lease and loss of her home, due to the Defendants' court filings and litigation tactics. ECF No. 4 at ¶ 21. Given this, the Plaintiff's alleged harm is sufficiently concrete and particularized to establish standing and this harm is also fairly traceable to the Defendants. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016); *O'Leary*, 60 F.4th at 243; *DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022); *Heintz v. Jenkins*, 514 U.S. 291 (1995) (attorneys who regularly engage in debt-collection litigation are themselves subject to the FDCPA for their own conduct in that litigation).

Lastly, the Court is satisfied that the Plaintiff's alleged injury would likely be redressed by the injunctive and monetary relief she seeks, because she seeks declaratory and injunctive relied that, if granted by the Court, would enjoin the Defendants from bringing eviction proceedings against her in the future. *Justice 360 v. Stirling*, 42 F.4th 450, 459 (4th Cir. 2022). And so, the Court declines to dismiss the complaint on standing grounds.

**B. The Plaintiff Fails To State Plausible Claims For Relief**

**1. The Plaintiff Fails To State A Claim Under Section 1983**

While the Court is satisfied that the Plaintiff ha standing to pursue her claims, the Defendants persuasively argue that her claims in this civil action are not plausible. And so, the for the reasons that follow, the Cour must DISMISS these claims.

First, a careful reading of the complaint makes clear that the Plaintiff's Section 1983/due process claim against the Defendants is no plausible, because the Defendants are not state

actors and the Plaintiff alleges no facts to show that the Defendants undertook actions on behalf of the State of Maryland. To state a claim under Section 1983, the Plaintiff must allege facts to show that: (1) a right secured by the Constitution or laws of the United States was violated and (2) the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019), as amended (Jan. 9, 2019). And so, the under-color-of-state-law element of a Section 1983 claim "excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)).

In the complaint, the Plaintiff alleges that the Defendants violated her Fourteenth Amendment rights by "invoking judicial eviction powers using defective notices and unlawful filings" and by "knowingly assisting in seizure attempts of Plaintiff's leasehold interest through unlawful summary ejectment filings." ECF No. 4 at 7-8. But, as the Plaintiff acknowledges in the complaint, the Defendants are a private attorney and a private law firm, respectively, that have been retained by UDR and Consolidated to represent them in the state-court eviction proceedings at issue in this case. ECF No. 4 at ¶¶ 8-9.

Given this, the Plaintiff cannot show that these Defendants were not acting under color of state law to support her Section 1983 claim. And so, the Court DISMISES this claim. Fed. R. Civ. P. 12(b)(6).

**2. The Plaintiff Fails To State A Claim Under TILA**

The Plaintiff's Truth in Lending Act is also problematic. TILA requires, among other things, that lenders "clearly and conspicuously provide a number of disclosures to borrowers, including the disclosure of the borrowers' right to rescind a consumer credit transaction." *Watkins v. SunTrust Mortgage, Inc.*, 663 F.3d 232, 234 (4th Cir. 2011) (quoting 15 U.S.C. § 1601(a)). And so, by its terms, the TILA's disclosure obligations run from a creditor to a borrower in the context of a "borrower-lender relationship." *Clemens v. Home Savers, LLC*, 530 F. Supp. 2d 803, 807 (D. Va. 2008) (citing *In re Seven Springs, Inc.*, 159 B.R. 752, 756 (Bankr. E.D. Va. 1993)).

In the complaint, the Plaintiff alleges that her "[l]ease obligations were securitized or treated as credit instruments without TILA-required disclosure," and that she "was not informed of the true party in interest or the legal consequences of her lease being treated as a financial instrument subject to enforcement by third parties." ECF No. 4 at 9. But, again, the complaint makes clear that the Defendants are not creditors under TILA, because they did not loan money to the Plaintiff. ECF No. 4 at ¶¶ 8-9, 14A. Nor are the Defendants parties to the

Lease Agreement at issue in this case. *Id*.

Absent such a borrower-lender relationship between the Plaintiff and the Defendants, TILA's disclosure requirements do not apply to the Defendants. *See Clemens*, 530 F. Supp. 2d at 807. And so, the Court must also DISMISS the Plaintiff's TILA claim. Fed. R. Civ. P. 129b)(6).

**3. The Plaintiff Fails To State A Claim Under Civil RICO**

The Plaintiff's civil RICO claim against the Defendants is also not plausible. To state a civil RICO claim, the Plaintiff must allege facts to show: "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Morley v. Cohen*, 888 F.2d 1006, 1009 (4th Cir. 1989) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). In addition, the Plaintiff must show: (1) a violation of a prohibited act under Section 1962; (2) injury to business or property; and (3) that the defendant's violation proximately caused that injury. 18 U.S.C. § 1964(c); *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). In addition, the Plaintiff must allege facts to show that each Defendant in this civil action intended to engage in the conduct with actual knowledge of the illegal activity alleged. *Walters v. McMahen*, 684 F.3d 435, 440-43 (4th Cir. 2012).

The Plaintiff has not satisfied these requirements here. In the complaint, the Plaintiff alleges in a conclusory manner that the Defendants "formed an enterprise using mail and wire fraud, fraudulent eviction filings and collecting unlawful debts," and lists as predicate acts mail fraud, wire fraud, fraud on the court, use of fictitious or unauthorized documents, and collection of an unlawful debt. ECF No. 4 at 9. But there are no factual allegations in the complaint to support the elements of her RICO claim. *See generally*, ECF No. 4. Notably, the actual allegations in the complaint fail to identify the members of the alleged enterprise, explain how that enterprise was structured, or how it functioned, or to show a "pattern" of racketeering activity. *Id.* Nor does the complaint allege facts to showing that either Defendant acted with knowledge of, or intent to participate in, any illegal scheme. *Walters*, 684 F.3d at 440-43.

Given this, the Court agrees that the Plaintiff fails to state a plausible civil RICO claim *Iqbal*, 556 U.S. at 678-79 (holding that bare labels reciting the elements of a RICO enterprise and pattern of racketeering, without supporting factual allegations, do not state a plausible claim for relief). And so, the Court must also DISMISS the Plaintiff's civil RICO claim. Fed. R. Civ. P. 12(b)(6).

**4. The Plaintiff Fails To State A Plausible Fraud And Abuse Of Process Claims**

Turning to the Plaintiff's fraud and abuse of process claim in Count IV of the complaint, the factual allegations in the complaint also show that this claim is not plausible for two reasons.

First, the complaint lacks sufficient factual allegations to plead with particularity the alleged fraud in this case. To state a fraud claim based upon the Defendants' alleged misrepresentations, the Plaintiff must plead with particularly facts to show that: (1) the Defendant made a false representation to her; (2) the falsity of the representation was either known to the Defendants, or the misrepresentation was made with reckless indifference to its truth; (3) the misrepresentation was made for the purpose of defrauding the Plaintiff; (4) the Plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the Plaintiff suffered compensable injury as a result of the misrepresentation." *Hoffman v. Stamper*, 867 A.2d 276, 292 (2005); *see Dominion Fin. Servs., LLC v. Pavlovsky*, 673 F. Supp. 3d 727, 747 (D. Md. 2023) (quoting *McCormick v. Medtronic, Inc.*, 219 Md. App. 485, 528 (2014)). In the complaint, the Plaintiff alleges that the Defendants "[k]nowingly filed summary ejectment complaints under the name 'Consolidated-Hamilton LLC' using notices issued by a UDR employee (Costner) with no legal authority" and "[m]isrepresented standing and facts to the Maryland District Court in order to secure wrongful relief." ECF No. 4 at 9. But these allegations lack the particularity Rule 9(b) requires, because the complaint does not contain facts to show that: (1) the alleged misrepresentations were made for the purpose of defrauding the Plaintiff; (2) the Plaintiff relied on these misrepresentations; and (3) she suffered a compensable injury as a result of the misrepresentations. *See generally*, ECF No. 4.

Given this, the Plaintiff fails to state her fraud claim with the requisite particularity. Fed. R. Civ. P. 9(b). And so, the Court DISMISSES this claim.

Second, the Plaintiff similarly fails to state claim for abuse of process in the complaint. To state a claim for abuse of process, the Plaintiff must allege facts show that: (1) the Defendants willfully used process after it has issued in a manner not contemplated by law; (2) the Defendants acted to satisfy an ulterior motive; and (3) damages resulted from the Defendants' "perverted use of process." *One Thousand Fleet Ltd. P'ship v. Guerriero*, 694 A.2d 952, 956 (1997). But, the Defendants persuasively argue that the Plaintiff show that they used the eviction process at issue in this case "in a manner not contemplated by law," because Maryland law allows a landlord, or the landlord's agent or attorney, to file a complaint to evict a tenant for failure to pay rent or breach of a lease. Md. Code, RP § 8-401(b)(2). The complaint is also devoid of any factual allegations to show that the

Defendants pursued the eviction proceedings to satisfy some ulterior motive, rather than to carry the instructions and wishes of their clients. *One Thousand Fleet*, 346 Md. at 38.

Given this, the Plaintiff fails to state a claim for abuse of process. And so, the Court must DISMISS this claim. Fed. R. Civ. P. 12(b)(6).

**5. The Plaintiff Fails To State Plausible MCPA AND MCDCA Claims**

The complaint also makes clear that the Plaintiffs MCPA and MCDCA claims are not plausible.

To state a claim under the MCPA, the Plaintiff must allege facts to show that: (1) the Defendants engaged in an unfair or deceptive practice or misrepresentation;(2) she relied upon the unfair or deceptive practice, or misrepresentation; and (3) doing so caused her injury. *Barr*, 303 F. Supp. 3d at 416 (quoting *Palermino v. Ocwen Loan Servicing*, LLC, No. 14-0522, 2015 WL 6531003, at *2 (D. Md. Oct. 26, 2015)). Similar to her fraud claim, the Plaintiff's MCPA claim is also subject to the heightened pleading standard under Fed. R. Civ. P. 9(b). *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013); *see also* Fed. R. Civ. P. 9(b).

The complaint makes clear that the Plaintiff's MCPA claims is not plausible. In the complaint, the Plaintiff alleges that the Defendants violated the MCPA by "fail[ing] to disclose material facts (e.g., standing, licensure)" and by "us[ing] deceptive practices to threaten [the] Plaintiff with eviction and legal penalties not authorized by law." ECF No. 4 at 8-9. But there are no factual allegations in the complaint to show, with the particularity, *how* the Defendants' identification of UDR as the party pursuing eviction proceedings against the Plaintiff constitutes an unfair or deceptive practice. ECF No. 4; *see also Marchese*, 917 F. Supp. 2d at 465.

Nor are there factual allegations in the complaint to show that the Plaintiff relied on any misrepresentations by the Defendants in the eviction notice or court filings at issue in this case to her detriment. *See generally* ECF No. 4. The Plaintiff also does not allege in the complaint that she would have acted differently in response to the Defendants' eviction and collection efforts had the court filings and notices identified Consolidated, rather than UDR, as the plaintiff associated with those proceedings.

Without such factual allegations, the Plaintiff's MCPA claim simply is not plausible.[4] *Barr*, 303 F. Supp. 3d at 416. And so, the Court DISMISSES this claim. Fed. R. Civ. P.

---

[4] As the Defendants also correctly observe, the MCPA exempts from liability the "professional services of a . . . lawyer." Md. Code Ann., CL § 13-104(1). And so, it appears that the Plaintiff's MCPA claim would also be precluded for this reason.

12(b)(6).

The Plaintiff also fails to state a plausible MCDCA claim in this case. To state a claim under the MCDCA, the Plaintiff must allege facts to show that: (1) the Defendants did not possess the right to collect the amount of debt sought; and (2) the Defendants attempted to collect the debt knowing that they lacked the right to do so. *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 420 (D. Md. 2018) (quoting *Lewis v. McCabe, Weisberg & Conway, LLC*, No. 13-1561, 2014 WL 3845833, at *6 (D. Md. Aug. 4, 2014)); *see also D'Aoust v. Diamond*, 36 A.3d 941, 957 (2012). This claim is also subject to the heightened pleading standards under Rule 9(b). *Butler v. Citizens Bank, N.A.*, No. 17-3417, 2018 WL 2840413, at *4 (D. Md. June 11, 2018) (holding that a MCDCA claim is subject to the heightened pleading standard under Fed. R. Civ. P. 9(b), which requires a plaintiff to plead "with particularity the circumstances constituting fraud").

In the complaint, the Plaintiff alleges that the Defendants violated the MCDCA by "attempt[ing] to collect a debt using improper threats and without proper licensure." ECF No. 4 at 9. But, the complaint lacks factual allegations to show that the Defendants lacked the right to collect the rent due under the Lease Agreement and to pursue eviction proceedings against the Plaintiff on behalf of their clients. *See generally* ECF No. 4. As the Defendants observe, Maryland law authorizes a landlord's attorney to file a complaint to evict a tenant for nonpayment of rent or breach of a lease. *See* Md. Code, RP § 8-401(b)(2). The Plaintiff also acknowledges in the complaint that the Defendants were retained by UDR and Consolidated-Hampton to commence eviction proceedings against the Plaintiff. ECF No. 4 at ¶¶ 8-9.

The Plaintiff also does not dispute that the Defendants were not required to be licensed in Maryland to engage in the debt collection activities at issue in this case. Notably, Maryland law exempts lawyers collecting a debt on behalf of a client from the licensing requirements of the Maryland Collection Agency Licensing Act, unless the lawyers employ a non-lawyer primarily engaged in debt collection. Md. Code, Bus. Reg. § 7-102(b)(9). There are no facts in the complaint to show that this exception applies here. ECF No. 4.

Given this, the Court agrees with the Defendants that the Plaintiff fails to state a claim against them under the MCDCA. And so, the Court DISMISSES the Plaintiff's MCDCA claim. Fed. R. Civ. P. 12(b)(6).

**C. The Plaintiff States A Claim Under The FDCPA**

As a final matter, the Plaintiff's FDCPA claims are on somewhat firmer footing. And so, for the reasons that follow, the Court declines to dismiss the Plaintiff's Section 1692e and

1692g FDCPA claims at the 12(b)(6) stage of this litigation.

To state a claim under the Fair Debt Collection Practices Act, the Plaintiff must allege facts to show that: (1) the Defendants are "debt collectors" as defined by that statute; (2) the Plaintiff was the "object of collection activity" arising from a consumer debt; and (3) the Defendants were engaged in an act or omission prohibited by the FDCPA. *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 333 n.3 (4th Cir. 2012). The FDCPA defines a "debt collector" as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be due another." 15 U.S.C. § 1692a(6).

Relevant to this dispute, Section 1692e(2)(A) of the FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Section 1692e(14) of this statute also prohibits the "use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." *Id.* § 1692e(14).

In addition, Section 1692f of the FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt" and the statute provides a non-exhaustive list of conduct that violates the section. 15 U.S.C. § 1692f; *see also Stewart v. Bierman*, 859 F. Supp. 2d 754, 765 (D. Md. 2012). Because courts use Section 1692f to punish conduct that the FDCPA does not specifically cover, a Section 1692f claim fails, when a plaintiff "rel[ies] on conduct that is covered by § 1692e and do[es] not allege any separate or distinct conduct to support a § 1692f violation." *Lembach v. Bierman*, 528 F. App'x 297, 304 (4th Cir. 2013). Lastly, Section 1692g of the FDCPA requires that a debt collector send the consumer written notice of, among other things, the amount of the debt, the name of the creditor, and the consumer's right to dispute the debt within thirty days, within five days of the "initial communication with a consumer in connection with the collection of any debt,". 15 U.S.C. § 1692g(a). But this provision makes clear that "[a] communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)." *Id.* at § 1692g(d).

The Defendants argue that the Court should dismiss the Plaintiff's FDCPA claims at the 12(b)(6) stage of this case, because: (1) they did not engage in any act or omission prohibited by the FDCPA and (2) the cannot be held liable for the actions of their clients. ECF No. 28-1 at 15-19 and 25–26. For the reasons that follow, the Court largely disagrees.

In Count I of the complaint, the Plaintiff alleges that the Defendants violated Sections 1692e, 1692f and 1692g of the FDCPA. ECF No. 4 at 7. To support these claims, the

Plaintiff identifies three categories of conduct by the Defendants: (1) the Defendants' filed court documents naming "UDR, Inc." as her landlord and relied on eviction notices issued and signed by Ms. Costner; (2) the Defendants pursued collection of a debt without validating the debt, or verifying legal standing after she submitted a written dispute; and (3) the Defendants used eviction notices from UDR, which is not a licensed debt collector in Maryland. ECF No. 4 at 7. While the Defendants argue that they are not required to be license to collect a debt in Maryland, because the meet the requirements to collect a debt without a license under the MCALA, this is a factual question that cannot be resolved in connection with their motion to dismiss and there are not sufficient facts currently before the Court to determine whether the Defendants are exempt from this licensing requirement.

The Defendants also argue without persuasion that the Court should dismiss the Plaintiff's Section 1692e FCDCA claim, because the Plaintiff cannot show that any misrepresentations that they made in the eviction proceedings was materially misleading. ECF No. 28-1 at 17-18. The Court agrees that the complaint contains limited factual allegations to explain how the Plaintiff was misled by the Defendants' court filings. But the Court is not convinced that the Plaintiff is unable to make such a showing based on the evidence in this case. And so, the Court declines to dismiss the Plaintiff's Section 1962e FDCPA claim at this early stage in these proceedings.

To prevail on her Section 1692g FDCPA claim, the Plaintiff must show that the Defendants failed to send her a written notice of, among other things, the amount of the debt, the name of the creditor, and her right to dispute the debt within thirty days, within five days of their initial communication in connection with the collection of the debt. 15 U.S.C. § 1692g(a). The Defendants correctly observe that a communication in the form of a formal pleading in a civil action is not be treated as an initial communication for purposes of this provision. *Id.* at § 1692g(d). But, it is not clear from the evidence currently before that the Defendants' only communications with the Plaintiff were *via* court pleadings. Given this, the Defendants have not shown that the Plaintiff's Section 1692g FDCPA claim is implausible.

The Defendants' argument that the Plaintiff fails to state a claim under Section 1962f of the FDCPA in this civil action is more convincing. As the Defendants correctly observe, the complaint simply alleges that the Defendants violated this provision for the same reasons that they violated Section 1962e as discussed above. And so, the Plaintiff fails to state a claim under Section 1962f of the FDCPA. *Lembach*, 528 F. App'x at 304.

Lastly, the Court observes that the Defendants' *bona fide* error and qualified immunity defenses to the Plaintiff's FDCPA claims cannot be established based on evidentiary the

record currently before the Court. As the Defendants correctly observe, Section 1692k of the FDCPA provides that "a debt collector may not be held liable in any action brought under this Title if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance procedures reasonably adapted to avoid such error." 15 U.S.C. § 1692k. But there is not sufficient evidence before the Court at this time to make such a finding in this case.

There is also insufficient evidence before the Court to determine whether the Defendants are entitled to qualified immunity under Maryland's attorney/litigation privilege. *Pinner v. Pinner*, 201 A.3d 26, 43 (2019), *aff'd*, 225 A.3d 433 (2020) (Under Maryland law, a lawyer may not be liable to a non-client for allegedly tortious conduct committed within the scope of performing her duties for a client.). And so, the Court declines to dismiss the Plaintiff's FDCPA claims, with the exception of her claim based upon Section 1962f of the FDCPA.

## V. CONCLUSION

For the forgoing reasons, the Court:

(1) **GRANTS-in-PART and DENIES-in-PART** the Defendants' motion to dismiss (ECF No. 28); and

(2) **DISMISSES** Counts II-VIII of the complaint and the Plaintiff's Section 1692f claim in Count I of the complaint.

An Order consistent with this Memorandum Opinion issued on September 3, 2026.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge